UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------ x

| | |
|---|---|
| UNITED STATES OF AMERICA | : |
|   - against - | : S3 12 Cr. 45 (RJS) |
| | : |
| DAMIAN CUNNINGHAM, | : |
|                                Defendant. | : |

------------------------------------------------------------------ x

# GOVERNMENT'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT CUNNINGHAM'S MOTION TO SUPPRESS

PREET BHARARA
United States Attorney for the
Southern District of New York
One St. Andrew's Plaza
New York, New York 10007

Amy Lester
Jessica A. Masella
Assistant United States Attorneys
 -Of Counsel-

```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------ x
UNITED STATES OF AMERICA                  :
                                                                          S3 12 Cr. 45 (RJS)
      - against -                                      :

DAMIAN CUNNINGHAM,                        :

                          Defendant.       :
------------------------------------------------------------------ x
```

### GOVERNMENT'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT CUNNINGHAM'S MOTION TO SUPPRESS

The Government respectfully submits this memorandum of law in opposition to the pre-trial motion filed by defendant Damian Cunningham, which requests (1) the suppression of physical evidence recovered by officers with the New York City Police Department ("NYPD") after they stopped a car driven by Cunningham in the Bronx on December 26, 2011; and (2) the suppression of statements made by Cunningham during a recorded telephone call with incarcerated prisoner Lacey Scott. For the following reasons, both aspects of Cunningham's motion should be denied without a hearing.

### BACKGROUND

Damian Cunningham is charged in a two-count Superseding Indictment with conspiring to commit armed robberies, in violation of Title 18, United States Code, Section 1951 (Count One); and using, carrying, and possessing firearms, which were discharged, during and in relation to, and in furtherance of, the robbery conspiracy, in violation of Title 18, United States Code, Sections 924(c)(1)(A)(iii) and 2 (Count Two).

The Indictment contains seven Overt Acts outlining specific robberies which took place

during the course of the conspiracy, including a robbery on or about October 29, 2011 in the Bronx, New York, in which Cunningham participated (Overt Act "d").  As established at the trial of Dwayne Barrett and Jermaine Dore, on October 29, 2011, Barrett, Dore, Cunningham, and Patrick Taylor robbed Ahmed and Kassim Salahi, two brothers who own several live poultry markets in the Bronx.  After sitting outside Ahmed Salahi's home on Radcliff Avenue for the better part of the day, the robbers followed him to a mosque on Rhinelander Avenue.  When Ahmed Salahi came out of the mosque, Dore and Cunningham assaulted him, pushed him into his minivan, and drove the minivan back towards his house.  They took his car keys, and Cunningham then held him down at knifepoint, while Dore went into his house.  When Dore got inside, he found that Ahmed Salahi's brother, Kassim Salahi, was inside with his two sons.  Dore then got Barrett to assist him, and Dore and Barrett brandished guns at the victims while they searched the house for money.  Dore and Barrett took approximately $15,000 from the house, which were proceeds from the Salahis' business.

      Cunningham was originally charged in criminal complaint 13 Mag. 126 (the "Complaint"), with the same charges now included in the Superseding Indictment.  (A copy of the Complaint is attached to the accompanying Declaration of Amy Lester ("Lester Decl.") as Exhibit A.)  The Complaint outlines facts relating to Cunningham's participation in the October 29, 2011 robbery, as well Cunningham's arrest on December 26, 2011 after his car was stopped by the NYPD.  According to the Complaint, on December 26, 2011, Cunningham was driving a car in the area of East 226th Street in the Bronx, with a passenger, when an NYPD officer ("Officer-1") observed him committing several traffic infractions and pulled over the car.  (Complaint ¶ 6(b)).  When Officer-1 requested that Cunningham produce his driver's license and

registration, Cunningham did not comply, and Officer-1 asked Cunningham to get out of the car. (Complaint ¶ 6(c)).  Officer-1 patted down Cunningham's clothing and discovered a knife in his rear pants pocket.  (*Id.*).  Another officer observed a handgun underneath the passenger seat in Cunningham's car.  (*Id.*).  The handgun recovered from Cunningham's car was a loaded .44 caliber revolver.  (Complaint ¶ 6(d)).  Cunningham and his passenger, Lacey Scott, were placed under arrest.  After the arrests, the NYPD searched the car and recovered duct tape and gloves from the interior of the car.  (Complaint ¶ 6(e)).

Cunningham has not submitted an affidavit in support of his motion to suppress.  Instead, as part of his submission to the Court, he has included a copy of a declaration dated September 6, 2012, submitted by Lacey Scott, the passenger in his car on December 26, 2011, in support of Scott's suppression motion in his own criminal case under Indictment 12 Cr. 154 (RJS) ("9/6/12 Scott Decl.").  In his declaration, Scott states that on December 26, 2011, he agreed to pay Cunningham five dollars to drive him to a diner, and was seated in the passenger seat of the car when the car was pulled over by the police.  (9/6/12 Scott Decl. ¶¶ 2, 3).  Scott also states that he "did not observe the car travel above 30 mph" before it was pulled over, nor did he "observe Mr. Cunningham fail to stop at a stop sign before he was pulled over."  (9/6/12 Scott Decl. ¶¶ 4, 5).

On January 9, 2013, this Court held a suppression hearing in Scott's criminal case, 12 Cr. 154 (RJS), on Scott's motion to suppress the evidence seized from Cunningham's car as a result of the December 26, 2011 car stop.  (A transcript of the hearing is attached to the Lester Decl. as Exhibit B.)  The Government presented the testimony of the two NYPD officers involved in the stop.  Scott did not testify and did not present any evidence on his own behalf.  On January 24, 2013, the Court heard oral argument from both parties on the motion and denied Scott's motion

3

to suppress. (A transcript of the January 24, 2013 oral argument and ruling of the Court ("1/24/13 Tr.") is attached to the Lester Decl. as Exhibit C.) The Court credited the testimony of the two NYPD officers that Cunningham's car had failed to stop at a stop sign. (1/24/13 Tr. at 32). The Court also credited the testimony of the NYPD officer who recovered the gun from Cunningham's car about the circumstances under which he observed the gun under the passenger seat of the car. (1/24/13 Tr. at 33).

## ARGUMENT

**I.    The Court Should Deny Cunningham's Motion to Suppress the Physical Evidence Recovered on December 26, 2011 Without a Hearing**

Cunningham has not raised disputed issues of material fact in support of his motion to suppress the physical evidence recovered from his car as a result of the December 26, 2011 car stop and, therefore, his motion should be denied without a hearing.

### A.    Applicable Law

An evidentiary hearing on a suppression motion is required only if "the moving papers are sufficiently definite, specific, detailed, and nonconjectural to enable the court to conclude that contested issues of fact" are in question. *United States* v. *Pena*, 961 F.2d 333, 339 (2d Cir. 1992). An evidentiary hearing is not required "where a defendant's allegations are general and conclusory or are based upon suspicion or conjecture." *United States* v. *Castellano*, 610 F. Supp. 1359, 1439 (S.D.N.Y. 1985); *see also United States* v. *Viscioso*, 711 F. Supp. 740, 745 (S.D.N.Y. 1989). A district court may decide the motion without a hearing if the moving papers do not create a genuine dispute as to any *material* fact. *See United States* v. *Caming*, 968 F.2d 232, 236 (2d Cir. 1992) (affirming the denial of a suppression hearing where "[t]he defense affidavits did not deny or refute the allegations" in the Government's affidavit), *abrogated on*

4

*other grounds*, *Peck* v. *United States*, 73 F.3d 1220 (2d Cir. 1995). Ordinarily, the disputed issue of fact must arise from affidavits that are based on personal knowledge of the facts. *United States* v. *Gillette*, 383 F.2d 843, 848 (2d Cir. 1967) (finding defense counsel's affidavit submitted in support of a suppression motion insufficient to raise an issue of material fact).

Where an affidavit fails to set forth in sufficient detail the circumstances that would justify suppression, the district court may deny the motion without a hearing. *See United States* v. *Culotta*, 413 F.2d 1343, 1345 (2d Cir. 1969); *Viscioso*, 711 F. Supp. at 745.

### B.     Discussion

Cunningham has not submitted a sworn statement in support of his motion to suppress. Instead, he relies on a declaration by the passenger in his car, Lacey Scott, submitted in a separate case. As an initial matter, there is no indication in Cunningham's papers that Scott acquiesced to the filing of his declaration in this case, or that he would be available to testify on Cunningham's behalf. In fact, it is highly unlikely that Scott would testify at a hearing in this case, given that he is still facing sentencing on his own case, and would be risking the possibility of additional exposure at sentencing based upon his testimony in this case. Therefore, the declaration submitted by Cunningham is of little evidentiary value, and should be disregarded by the Court. *See United States* v. *Al Marri*, 230 F. Supp. 2d 535, 539 (S.D.N.Y. 2002) (valuing live testimony "over the contents of a defendant's affidavit" because the defendant was not subject to cross-examination); *United States* v. *Juliano*, No. 99-1197, 2000 WL 1206745, *4 n.4 (S.D.N.Y. Aug. 24, 2000) ("[B]ecause defendant did not testify at the hearing and was not subject to cross-examination . . . the Court gives little weight to defendant's assertion"); *United States* v. *Frank*, 8 F. Supp. 2d 284, 291 n.2 (S.D.N.Y. 1998) ("Since [the defendant] did not

testify at the hearing, and was not subject to cross-examination, the Court was unable to form an opinion as to his credibility or the truthfulness of his allegations.").

Moreover, in his declaration, Scott does not definitively state that Cunningham's car did not run a stop sign or did not commit any traffic infractions. Instead, Scott merely claims that "he did not observe" the car run a stop sign or speed before it was pulled over. Even if credited, Scott's declaration thus leaves open the possibility that the car ran a stop sign, and is not sufficient to warrant a hearing on the legality of the car stop. In fact, in Scott's case, this Court determined that the same declaration now relied on by Cunningham in support of his motion was not sufficient to raise an issue of material fact, and Scott subsequently submitted a second declaration.[1] On the other hand, the Government has submitted a sworn statement, in the form of the Complaint against Cunningham, establishing a lawful basis for the car stop. As set forth in the Complaint: "After Officer-1 observed CUNNINGHAM commit several traffic infractions, Officer-1 and other NYPD officers pulled over CUNNINGHAM's car." (Complaint ¶ 6(b)). Standing alone, Scott's declaration raises no issue of material fact, and balanced against the sworn statement in the Complaint, it cannot create a disputed issue of fact with respect to the car stop. Therefore, Cunningham is not entitled to a hearing on his motion.

Finally, even the second declaration submitted by Scott – but not yet offered by Cunningham in this case – has already been discredited by this Court in connection with Scott's

---

[1] See Transcript of November 26, 2012 conference in case number 12 Cr. 154 (RJS) at 36 (THE COURT: "If Mr. Scott is asserting that the car did not travel more than 30 miles an hour and that it stopped at all stop signs, then I think we will have a hearing . . . ."); Docket Entry 42, 12 Cr. 154 (RJS) (Declaration of Lacey Scott dated November 30, 2012). A copy of the second declaration filed by Scott, dated November 30, 2012 ("11/30/12 Scott Decl."), is attached to the Lester Decl. as Exhibit D.

case. In Scott's second declaration, he states definitively that Cunningham's car "did not travel above 30 miles per hour before Mr. Cunningham was pulled over," and that the car "came to a complete stop at the stop sign at the intersection of Barnes Avenue and 226th Street." (11/30/12 Scott Decl. ¶¶ 4, 5). While the Court determined that these statements were sufficient to give rise to a hearing on the lawfulness of the stop, after hearing the evidence presented by the Government and oral argument from both parties, this Court credited the testimony of the two officers involved in the car stop that Cunningham failed to stop at a stop sign. (1/24/13 Tr. at 32). There is no reason to think that the outcome would be any different in this case. Accordingly, the Court should deny Cunningham's motion to suppress the physical evidence seized as a result of the car stop without a hearing.

## II.     The Court Should Deny Cunningham's Motion to Suppress His Recorded Statements

Cunningham also moves to suppress his statements on a recorded telephone call with Lacey Scott, which took place while Scott was incarcerated at Rikers Island. This argument is wholly meritless and should be denied by the Court without a hearing.

### A.     Relevant Facts

As a result of the car stop on December 26, 2011, Lacey Scott was charged by the Bronx County District Attorney's Office with Criminal Possession of a Weapon, in violation of New York State Penal Law Section 265. Scott was incarcerated in Rikers Island while his case was pending. On or about March 16, 2012, Scott was charged in a federal criminal complaint with being a felon in possession of a firearm, in violation of Title 18, United States Code, Section 922(g)(1), and transferred to federal custody.

While he was incarcerated at Rikers Island, Scott made telephone calls to various

individuals outside the prison.  These calls were recorded, pursuant to the standard regulations at the facility, and each call begins with a warning that the conversation may be recorded and monitored.[2]  The Government obtained a copy of the recordings by subpoena in connection with Scott's federal case.

On January 1, 2012, Scott placed a call to Cunningham in which the two men discuss some of the circumstances of the December 26, 2011 car stop.  A portion of the conversation is in Jamaican Patois.  This call was translated and transcribed by the Government, and a draft transcript was produced to Scott, as part of his case, and separately, to Cunningham.[3]  (A copy of the draft transcript is attached to the Lester Decl. as Exhibit E.)[4]

**B.     Discussion**

Cunningham's claim that he had a reasonable expectation of privacy in his phone call with Scott, and that the call must therefore be suppressed, is without any support in the law whatsoever, and should be rejected by the Court.  Cunningham claims that his Fourth Amendment rights were violated as a result of the recording, citing *United States* v. *Katz*, 389 U.S. 347 (1967), in which the Supreme Court held that an individual has a reasonable expectation of privacy in a phone call placed from a phone booth.  But the circumstances of the call placed by Scott to Cunningham are completely inapposite and do not implicate Cunningham's privacy rights.  Under New York State law, the consent of a single party to the recording of a telephone conversation is all that is legally required.  *See* N.Y.P.L. § 250.00

---

[2] This warning occurs before the recipient of the call is on the line.

[3] On June 18, 2013, the Government also produced the actual recording of the conversation to Cunningham's counsel.

[4] Cunningham is designated as "Unidentified Male 1" in the draft transcript.

8

(defining wiretapping as "the intentional overhearing or recording or a telephonic or telegraphic communication by a person other than a sender or receiver thereof, *without the consent* of either the sender or receiver") (emphasis added).  Scott, in placing the phone call to Cunningham on a line that includes a warning that the call may be recorded or monitored, impliedly consented to the recording of the call.  Any expectation of privacy that Cunningham may have had in the contents of the phone call is clearly not reasonable, in the sense that it is not an interest that would be recognized by society under the circumstances.  *See Katz*, 389 U.S. at 361 (test of whether an expectation of privacy is legitimate is whether the individual has "exhibited an actual (subjective) expectation of privacy," which "society is prepared to recognize as reasonable").  Therefore, there is no legal basis to suppress the phone call between Scott and Cunningham.

Moreover, the draft transcript of the call itself makes clear that Cunningham in fact had no subjective expectation of privacy during the call.  Cunningham and Scott both speak primarily in Jamaican Patois during the call, and use coded language during their discussion of the circumstances of the car stop and whether Cunningham would be willing to plead guilty to possessing the gun that was recovered from the car.  Both men refer to the potential penalties for possessing a gun by single letters, "F" for felony, "M" for misdemeanor, or "A" for an A-level misdemeanor under New York state law.  (*See* Draft Transcript at 3-6).  When Cunningham and Scott discuss whether Cunningham would be willing to plead to possessing the gun, neither man uses the word gun, referring instead to "that thing," or "that."  (Draft Transcript at 6 (Cunningham: "You see . . . The thing is . . . I don't trust that thing."), 7 (Scott: "No one could even say they got slapped with that, dog.  No one could say someone hit them in their head with that.").  Under these circumstances, Cunningham cannot even establish that he had a subjective

9

expectation of privacy in the phone call with Scott.  Indeed, Cunningham's own use of coded language, designed to prevent other listeners from understanding the details of his conversation, demonstrates the opposite – that Cunningham expected that the call might be monitored or recorded.

In sum, because Cunningham has no reasonable expectation of privacy in the recorded phone call with Scott, that he in fact had no subjective expectation of privacy in the phone call, and because there is no other legal basis for its suppression, Cunningham's motion in this respect should be denied without a hearing.

## CONCLUSION

For the reasons stated above, the Court should deny Cunningham's motion to suppress without a hearing.

Dated: New York, New York
       June 21, 2013

                                                          Respectfully submitted,

                                                          PREET BHARARA
                                                          United States Attorney

By:     s/ Amy Lester
           Amy Lester
           Jessica A. Masella
           Assistant United States Attorneys
           (212) 637-2416/2288