UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

                              :

TAIJAY TODD,

                              :

            Petitioner.

                              :

    - v. -                                   16 Civ. 382 (RJS)

                              :        12 Cr. 45 (RJS)

UNITED STATES OF AMERICA,

                              :

            Respondent.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

# MEMORANDUM OF LAW OF THE UNITED STATES OF AMERICA IN OPPOSITION TO TAIJAY TODD'S MOTION PURSUANT TO 28 U.S.C. § 2255 TO CORRECT, VACATE, OR SET ASIDE HIS CONVICTION

PREET BHARARA
United States Attorney for the
Southern District of New York
One St. Andrew's Plaza
New York, New York 10007

Jessica A. Masella
Assistant United States Attorney
     -Of Counsel-

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                              :
TAIJAY TODD,
                                              :
                        Petitioner.
                                              :
    - v. -                                                        16 Civ. 382 (RJS)
                                              :                   12 Cr. 45 (RJS)
UNITED STATES OF AMERICA,
                                              :
                        Respondent.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

I.      **Preliminary Statement**

        The Government respectfully submits this opposition to the petition filed by Taijay Todd

pursuant to Title 28, United States Code, Section 2255 on January 14, 2016 (the "Petition").

Through the Petition, Todd seeks to correct, vacate, or set aside his conviction, following his

guilty plea, to two charges contained in Indictment 12 Cr. 45 (RJS): (1) Count One, which

charged Todd with conspiring to commit Hobbs Act robberies, in violation of Title 18, United

States Code, Section 1951; and (2) Count Two, which charged Todd with using and carrying

firearms during and in relation to, and possessing firearms in furtherance of, the robbery

conspiracy, in violation of Title 18, United States Code, Section 924(c)(1)(A)(i).  Todd pleaded

guilty on February 28, 2013, approximately one week before his trial was scheduled to begin,

pursuant to a plea agreement with the Government in which the parties stipulated that the

applicable sentencing range under the United States Sentencing Guidelines (the "Guidelines")

was 190 to 222 months' imprisonment (the "Plea Agreement").  After Todd's guilty plea and

before his sentencing, Todd engaged in an assault on another inmate in the Metropolitan

Correctional Facility (the "MCC") where both were housed.  Subsequently, the Government

notified Todd's counsel that it intended to seek an above-Guidelines for Todd. Because Todd disputed the facts of the assault, the Government requested a *Fatico* hearing with respect to that incident. The Court held a *Fatico* hearing on August 8, 2013. On September 10, 2013, the Court sentenced Todd principally to 264 months' imprisonment. Todd appealed his sentence and, on February 5, 2015, the United States Court of Appeals for the Second Circuit issued a mandate upholding Todd's conviction and sentence on appeal.

In the Petition, Todd raises one issue. Todd starts from the premise that the Government "breached" the plea agreement by seeking an above-Guidelines sentence for him. (Pet. at 19).[1] From there, he argues that he "had a right" to withdraw his plea, that he asked that his counsel move to withdraw the plea, and that his counsel "ignored" his request and was ineffective for failing to seek to withdraw Todd's guilty plea. (Pet. at 19). Todd's claim is meritless. As an initial matter, Todd's premise – that the Government somehow "breached" the plea agreement – is false. Moreover, in any event, the record makes clear that Todd's counsel provided diligent and thorough representation of Todd with respect to all aspects of his case, including in connection with discussions regarding the benefits of pleading guilty and in not seeking to withdraw his guilty plea.

---

[1] "Petition" or "Pet." refers to the Petition (because the document does not contain page numbers, the page numbers referenced herein are to those created by the ECF/PACER header on the document); "A." refers to the appendix that Todd submitted with his brief on appeal; "Brill Affidavit" or "Brill Aff." refers to the affidavit of Steven Brill, Esq., which was filed by Steven Brill on April 4, 2016 in connection with the claim made in the Petition; "Plea Tr." refers to the transcript of Todd's February 28, 2013 guilty plea proceeding; and "PSR" or "Presentence Report" refers to the Presentence Investigation Report prepared by the United States Probation Office ("Probation Office") in anticipation of Todd's sentencing.

II.     **Background**

 A. **Todd's Plea Agreement and Guilty Plea Proceeding**

  The parties' plea agreement, dated February 25, 2013 and signed by Todd and his counsel on February 28, 2013 (the "Plea Agreement") contained the terms under which Todd agreed to plead guilty to Counts One and Two of the Indictment. (A. 40-48).  Among other things, the Plea Agreement contained the parties' stipulations concerning Todd's exposure under the United States Sentencing Guidelines (the "Guidelines" or "U.S.S.G.").  (A. 40-48).  In the Plea Agreement, Todd and the Government stipulated that Todd's combined base offense level for Count One, which is a robbery conspiracy count including four separate Hobbs Act robberies, was offense level 28.  (A. 40-48).  For Count Two, which carries a mandatory consecutive sentence, the parties stipulated that the Guidelines sentence was a five-year sentence that must be consecutive to any other sentence imposed.  (A. 40-48).  The parties further stipulated that Todd had a total of ten criminal history points, which placed him in Criminal History Category V. Therefore, given these calculations, the Plea Agreement stated that the stipulated Guidelines range was 190 to 222 months' imprisonment which was defined as the "Stipulated Guidelines Range."  (A. 40-48).  In addition, the parties agreed that "either party may seek a sentence outside of the Stipulated Guidelines Range. . . based upon the factors to be considered in imposing a sentence pursuant to Title 18, United States Code, Section 3553(a)."  (A. 40-48).

  On February 28, 2013, Todd appeared before the Court for the purpose of pleading guilty.  The Court conducted a careful and thorough hearing that complied in all respects with Federal Rule of Criminal Procedure 11.  (Plea Tr. 2-50).  Among other things, the Court placed Todd under oath, determined that Todd was competent to enter an informed plea, summarized the nature of the charges to which Todd was pleading guilty, confirmed that Todd understood the

charge against him, had discussed the charge with his attorney, and was satisfied with his

attorney's advice and representation.  (Plea Tr. 3-10, 19).

Furthermore, the Court determined that Todd understood the rights that he was giving up

by pleading guilty, including his rights (i) to a speedy, public trial by jury; (ii) to the assistance of

free, appointed counsel at trial; (iii) to confront and cross-examine witnesses; (iv) to compulsory

process; and (v) against compelled self-incrimination.  (Plea Tr. 11-16).  The Court also

explained that, if Todd went to trial, he would be presumed innocent and the Government would

be required to prove Todd's guilt beyond a reasonable doubt.  (*Id*.).  Todd said that he

understood those rights and was willing to waive them by pleading guilty.  (*Id*.).

With respect to potential penalties, the Court explained to Todd the maximum term of

imprisonment for the charges contained in the Indictment and explained the consecutive

mandatory minimum term required by Count Two of the Indictment.  (Plea Tr. 23-27).  The

Court also ensured that Todd understood that his sentence would be determined solely by the

Court; that the Court was not bound by the parties' Guidelines calculations; and that the

Guidelines were discretionary, not mandatory.  (Plea Tr. 28-34).

With respect to the parties' Plea Agreement, the Court confirmed that Todd had read and

reviewed the Plea Agreement and had discussed it with his attorney before signing it.  (Plea Tr.

34-35).  The Plea Agreement contains a provision specifying that the "parties agree that either

party may seek a sentence outside of the Stipulated Guidelines Range. . .based upon the factors

to be considered in imposing sentence pursuant to Title 18, United States Code, Section

3553(a)." (A. 46).  The Court also directed Todd's attention to the Plea Agreement's appeal

waiver and confirmed that Todd understood that waiver.  (Plea Tr. 37).  With respect to

sentencing, the Court explicitly confirmed that Todd understood that "the decision as to what

4

sentence you will receive is up to me," and that the Court "is not bound" by any prediction anybody may have made to Todd about what his sentence would be. (Plea Tr. 28). The Court also explained to Todd that, if he ultimately received a sentence that he was "really unhappy" with, Todd would "not be able to withdraw [his] guilty plea at that point." (Plea Tr. 34). Finally, the Court ensured that there was a sufficient factual basis for Todd's plea, and that Todd was pleading guilty because he was in fact guilty. (Plea Tr. 39-42).

### B.       Todd's Sentencing

#### 1.       The Presentence Report

In anticipation of Todd's sentencing, the Probation Office issued the Presentence Report, which, consistent with the Plea Agreement, calculated a total offense level of 28 for the charge contained in Count One Indictment plus a 60-month mandatory consecutive sentence for the charge contained in Count Two of the Indictment. The Probation Office in the Presentence Report also found that Todd was in Criminal History Category V, and, as such, calculated a total Guidelines range of 190 to 212 months' imprisonment, the same as that stipulated by the parties in the Plea Agreement.

#### 2.       Todd's Post-Plea Conduct

On March 10, 2013, after his guilty plea, Todd stabbed another inmate while both were incarcerated at the Metropolitan Correctional Facility (the "MCC"), a federal detention facility in Manhattan, New York for inmates awaiting trial or sentencing. The Government learned of that assault, and, prior to sentencing, notified the Court and counsel for Todd that, based on that assault, it would seek an above-Guidelines sentence for Todd at sentencing. Todd disputed the facts concerning the assault, and so the Government requested that the Court hold a *Fatico* hearing with respect to those facts.

5

### 3. The Fatico Hearing

On August 8, 2013, the Court held a *Fatico* hearing with respect to the disputed issues of fact related to Todd's sentencing. At that hearing, the Government called three witnesses, including Edward Ramirez, the victim of Todd's stabbing at the MCC; John Banks, an employee of the Bureau of Prisons (the "BOP") who works as a Disciplinary Hearing Officer (or "DHO"); and Luis Rodriguez, a BOP employee who works at the MCC as an investigative technician.

Edward Ramirez is a federal inmate who was housed in the MCC from approximately 2010 until March 2013. (A. 59-61). Ramirez pleaded guilty to a number of crimes, including a conspiracy to commit robbery, robberies, gun possession, and a conspiracy to distribute and possess with intent to distribute illegal drugs, pursuant to a cooperation agreement with the Government. (A. 61-62). Under that cooperation agreement, Ramirez was required to, among other things, testify at a trial against an individual named Louis McIntosh, and also known to Ramirez as "Lou Diamond," "G," and "Gansta Lou." (A. 62-63).

Ramirez first met Todd in the MCC about a week or two before he was stabbed. (A. 65). Ramirez and Todd were housed in the same dorm area of the MCC, and Todd approached Ramirez and asked Ramirez about Ramirez's co-defendants, including "Diamond," whom Ramirez understood to mean McIntosh. (A. 67-68). Ramirez, who was trying to keep his status as a cooperator from becoming known to others in the MCC, denied knowing McIntosh and his other co-defendants. (A. 68). The following day, Todd again approached Ramirez and told Ramirez that McIntosh had told Todd that Ramirez had "ratted on him," meaning that Ramirez was cooperating against McIntosh. (A. 69). During the next few days, Todd continued to make comments to other inmates about Ramirez being a "rat," or a "snitch," which Ramirez overheard,

and Todd also referred to the fact that Todd had been previously housed with Ramirez's co-defendant, McIntosh, while in the MCC.  (A. 70-71).

On March 10, 2013, the day of the stabbing, Todd confronted Ramirez, calling him a "rat" again and Todd asked Ramirez to meet him in the bathroom on their housing unit at the MCC.  (A. 74-75, 132).  Ramirez met Todd in the bathroom, where the two talked, after which Ramirez believed that he and Todd had resolved any dispute between themselves.  (A. 76).  A short time later, while Ramirez was sitting on his bed, Todd approached Ramirez and stabbed Ramirez several times, including in Ramirez's leg, the back of his head, and his elbow.  (A. 77-78).  Ramirez described the weapon used by Todd as a long, sharpened piece of metal, a little longer than a pencil, "like an icepick."  (A. 78).

After Ramirez was stabbed, both he and Todd were placed in the Special Housing Unit of the MCC.  (A. 82).  Later that night, Ramirez heard Todd yelling to another inmate, whom he understood to be a nephew of McIntosh's, to tell McIntosh that Todd "took care" of Ramirez for McIntosh.  (A. 82-83).  As a result of the stabbing, Ramirez suffered pain, swelling, and could not walk the next day.  (A. 84).

After the stabbing, Ramirez wrote to his lawyers about the incident and told BOP officials about it during the course of their investigation.  (A. 85-87).  Ramirez's injuries were also photographed by BOP officials.  (A. 87-89).  DHO Banks conducted a hearing with respect to the incident, concluded that there was not enough evidence to support an assault charge against Todd for this stabbing incident, and, as a result, the incident report was expunged.  (A. 124-125).  However, DHO Banks admitted that the investigation conducted by the MCC officials had found that there was sufficient evidence to determine that Todd had assaulted Ramirez, and

that, in reviewing the evidence, DHO Banks had interviewed Todd—and not Ramirez—about the assault. (A. 126).

The day after the stabbing, officials at the MCC conducted a full search of the entire housing unit in which both Todd and Ramirez had been housed. (A. 133-134). As a result of that search, MCC officials found long, sharpened, metal weapon, or "shank," like the one that was used to stab Ramirez. (A. 79, 133-134).

### 4.     Todd's Sentencing Proceeding

On September 10, 2013, the parties appeared before the Court for sentencing. (A. 149-213). During that proceeding, the Court explained the calculation that it would make pursuant to the Guidelines, including the applicable offense level and Todd's criminal history, and noted that the Guidelines sentencing range was "not mandatory" and that the Court would not have to sentence Todd within that range. (A. 155-56). After hearing from the parties with respect to any objections to the Guidelines calculation, the Court found that it agreed with the calculation done by the Probation Office in the Presentence Report, finding an applicable Guidelines range of 130 to 162 months' imprisonment on Count One, and 60 months on Count Two, for a total Guidelines sentencing range of 190 to 222 months' imprisonment. (A. 154-178). However, the Court also gave thorough consideration as to whether Todd should be held accountable in the Guidelines calculation for participation in the December 12, 2011 robbery which resulted in the murder of a victim. (A. 163-178). Had the Court found that Todd had participated in that robbery and murder by a preponderance of the evidence, his offense level for Count One would have been increased to level 40 (level 43 pursuant to Guidelines Section 2B3.1(c)(1) before subtracting three points for Todd's acceptance of responsibility). (A. 175). After hearing detailed arguments from the parties and considering the evidence, the Court concluded that that

8

the evidence of Todd's participation in the December 12, 2011 robbery and murder "does rise to the level of a preponderance" and that "the guidelines level could be factored up to level 43," the Court ultimately decided to keep the Guidelines calculation consistent with that of the parties and the Probation Office and "to consider it as a 3553a factor instead." (A. 175).

The Court next reviewed all of the factors present in Title 18, United States Code, Section 3553(a) and noted that it would have to consider all of them and to balance them before formulating a sentence for Todd.

Then, after noting that it had reviewed the written submissions of the parties, the Court heard the arguments of counsel for Todd and for the Government. (A. 179-197). The Court also allowed Todd the opportunity to speak. (A. 200-201). After hearing from all parties, the Court imposed sentence on Todd and stated his reasons for the sentence. First, the Court noted the seriousness of the crimes to which Todd had pleaded guilty, in particular "brutal robberies in which people were injured," people were "terrified," and in which weapons were often used. (A. 202). The Court stated that in any of the robberies in which Todd participated, "people could have been injured more seriously than they were or people could even have been killed." (A. 202). The Court further noted that this was "really troubling behavior," but even more troubling for Todd, because he was already on federal supervised release at the time he committed these robberies as a result of a previous drug conviction. (A. 202). The Court also considered Todd's assault on Ramirez, which he called "more senseless violence," concluding that – because Todd committed that offense while in jail awaiting sentencing for numerous violent robberies, that Todd has a "tendency towards violence," which gave the Court "great pause and real concern." (A. 204). The Court also noted that it considered the need for deterrence, to "send a message to [Todd] and others," especially because the robberies committed by Todd "are serious crimes,"

9

and the assault on Ramirez was also a serious crime.  (A. 204-05).  Ultimately, the Court

concluded that, in this case, "the guidelines are not appropriate, that they are insufficiently low,"

due to the "nature of the crime or crimes that [Todd] admitted to, the robberies that [Todd]

admitted to and the assault in jail, plus the fact that [Todd] committed these violent robberies

while [Todd] was on supervised release," and that Todd needed a sentence above the Guidelines

because his case "is different from many or most of the people who are charged with this crime

in this courthouse."  The Court imposed a sentence of 204 months' imprisonment on Count One,

to be followed by the mandatory consecutive sentence of 60 months' imprisonment on Count

Two, in addition to three years' supervised release, a $200 special assessment, and ordered

restitution for the victims of Todd's robberies.  (A. 206).

### 5.       Steven Brill's Affidavit

In connection with the Petition, Steven Brill, Esq., who represented Todd during all

proceedings in the instant case, including in connection with his guilty plea, the *Fatico* hearing,

and sentencing, submitted an affidavit, which he filed on April 4, 2016 (the "Brill Affidavit," or

"Brill Aff.") with respect to the issues raised by Todd in the Petition.  Among other things, in the

Brill Affidavit, Mr. Brill establishes that in advance of Todd's guilty plea, Mr. Brill had

numerous discussions with Todd about the terms of his guilty plea, the parties' Plea Agreement,

and the benefits and consequences to Todd of pleading guilty.  (Brill Aff. ¶¶ 2-7).  Mr. Brill told

Todd, among other things, that the Plea Agreement provided the benefit that Todd would be

exposed to a five-year mandatory minimum consecutive sentence on Count Two, rather than the

ten-year mandatory minimum sentence charged in Count Two of the Indictment.  (Brill Aff. ¶ 8).

Mr. Brill also explained to Todd that he likely faced a greater sentencing exposure after trial,

rather than after a guilty plea, with respect to certain "relevant conduct," including the December

12, 2011 robbery and murder.  (Brill Aff. ¶ 7).  In addition, Mr. Brill explained that the parties'

Plea Agreement provided that Todd would "have the ability to argue for a below Guideline

sentence," while the Government "could argue for above," and that the Court could sentence

Todd within the Guideline range or to "something different."  (Brill Aff. ¶ 9).

On July 24, 2013 and in advance of sentencing, Mr. Brill was notified by the Government

that it would seek an above-Guidelines sentence for Todd, based on his participation in the

stabbing of Edward Ramirez in the MCC.  (Brill Aff. ¶ 11).  After receiving that communication,

Mr. Brill met with and spoke to Todd several times to discuss issues related to his sentencing,

including on July 30, 2013 (in person), on August 6, 2013 (by phone), and on August 7, 2013 (in

person).  (Brill Aff. ¶¶ 14, 17, 18, 20, 21).  During each of these meetings, the August 7, 2013 of

which was over two hours in length, Mr. Brill discussed with Todd the issues related to his

sentencing, and, while Mr. Brill does not recall whether Todd specifically requested that he seek

to withdraw Todd's guilty plea, he recalls that they discussed at length issues related to Todd's

case and sentencing and that he is "fairly certain" that it was a part of their discussions, and that,

"if [Todd] expressed any concerns about the plea agreement, we certainly would have discussed

those concerns about the plea agreement, as well as his upcoming *Fatico* hearing."  (Brill Aff. ¶¶

14, 17, 18, 20, 21).

With respect to Todd's claim in the Petition that Mr. Brill somehow "ignored" Todd's

concerns and refused to move to withdraw Todd's plea, Mr. Brill states that, it is "not my

practice to ignore any client," and that he spoke with Todd at length and on multiple occasions

about these issues.  (Brill Aff. ¶¶ 21).  Moreover, he recalls specifically discussing the

Government's stated intention to seek an above-Guidelines sentence with Todd and advising

Todd that this "was not a basis to withdraw [his] guilty plea because the plea agreement

11

specifically permits the government to argue for a sentence above the guidelines, just as it allows the defense to argue for a term below the guideline range." (Brill Aff. ¶ 22). Mr. Brill also recalls that he discussed with Todd that, "notwithstanding the government's intention in seeking an above guideline sentence regarding the alleged assault, the same strategic and practical reason to accept the plea in the first place still applied." (Brill Aff. ¶ 22). In particular, Mr. Brill advised that "withdrawing the plea and proceeding to trial would have exposed Mr. Todd to significantly more time than the instant plea agreement," and moreover, that "Mr. Todd presented no legal grounds for withdrawing his plea." (Brill Aff. ¶ 22). Notably, neither Todd nor Mr. Brill asserts that Todd was requesting to proceed to trial at that point, and neither asserts any strategic advantage to seeking to proceed to trial, even after the Government stated its intention to argue for an above-Guidelines sentence.

**III.   Argument**

In the Petition, Todd raises one issue. Todd starts from the premise that the Government "breached" the Plea Agreement by seeking an above-Guidelines sentence for him. (Pet. at 19). From there, he argues that he "had a right" to withdraw his plea, that he asked that his counsel move to withdraw the plea, and that his counsel "ignored" his request and was ineffective for failing to seek to withdraw Todd's guilty plea. (Pet. at 19). Todd's claim is meritless. As an initial matter, Todd's premise – that the Government somehow "breached" the plea agreement – is false, because the Plea Agreement, by its explicit terms, allowed each party to argue for a sentence outside of the Guidelines range, which is what the Government did here. Moreover, in any event, the record, including the detailed Brill Affidavit, provided by Todd's counsel, Steven Brill, makes clear that Todd's counsel provided diligent representation of Todd with respect to

all aspects of his case, including discussing with Todd the benefits of pleading guilty and in not seeking to withdraw his guilty plea.

### A. Applicable Law

#### 1. Ineffective Assistance of Counsel

To prevail on a claim of ineffective assistance of counsel, a defendant must: (1) demonstrate that counsel's performance fell below an "objective standard of reasonableness" under "prevailing professional norms"; and (2) "affirmatively prove prejudice" from the alleged dereliction in counsel's performance. *Strickland* v. *Washington*, 466 U.S. 668, 687-88, 693-94 (1984). With respect to the first prong of this test, "a reviewing court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *United States* v. *Venturella*, 391 F.3d 120, 135 (2d Cir. 2004) (internal quotation marks omitted). With respect to the second prong, a defendant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694; *see also, e.g.*, *United States* v. *Abad*, 514 F.3d 271, 275-76 (2d Cir. 2008) ("counsel could not therefore have been ineffective for failing to make a motion that would have been futile."). The burden is on a defendant to establish both elements. *Id*. at 687.

> "Surmounting *Strickland*'s high bar is never an easy task." *Padilla* v. *Kentucky*, 559 U.S. 356, ——, 130 S. Ct. 1473, 1485, 176 L.Ed.2d 284 (2010). An ineffective-assistance claim can function as a way to escape rules of waiver and forfeiture and raise issues not presented at trial, and so the *Strickland* standard must be applied with scrupulous care, lest "intrusive post-trial inquiry" threaten the integrity of the very adversary process the right to counsel is meant to serve. *Strickland*, 466 U.S., at 689-690, 104 S. Ct. 2052. Even under *de novo* review, the standard for judging counsel's representation is a most deferential one. Unlike a later

> reviewing court, the attorney observed the relevant proceedings, knew of materials outside the record, and interacted with the client, with opposing counsel, and with the judge.  It is "all too tempting" to "second-guess counsel's assistance after conviction or adverse sentence." *Id.*, at 689, 104 S.Ct. 2052; *see also Bell* v. *Cone*, 535 U.S. 685, 702, 122 S. Ct. 1843, 152 L.Ed.2d 914 (2002); *Lockhart* v. *Fretwell*, 506 U.S. 364, 372, 113 S. Ct. 838, 122 L.Ed.2d 180 (1993).  The question is whether an attorney's representation amounted to incompetence under "prevailing professional norms," not whether it deviated from best practices or most common custom.  *Strickland*, 466 U.S., at 690, 104 S. Ct. 2052.

*Harrington* v. *Richter*, 562 U.S. 86, 131 S. Ct. 770, 788 (2011).

A court should typically not second-guess strategic or *tactical* decisions made by counsel. "There are … 'countless ways to provide effective assistance in any given case.  Even the best criminal defense attorneys would not defend a particular client in the same way.'  Rare are the situations in which the 'wide latitude counsel must have in making tactical decisions' will be limited to any one technique or approach."  *Harrington* v. *Richter*, 131 S. Ct. at 788-89  (quoting *Strickland*, 466 U.S. at 689).  Although defense counsel is required to engage in reasonable investigations, counsel may "make a reasonable decision that makes particular investigations unnecessary."  *Strickland*, 466 U.S. at 691.

The touchstone is simple: "strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation. In other words, counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary."  *Id.* at 690-91.

A petitioner raising an issue regarding the effectiveness of his attorney must allege specific facts in support of his claim; "bald assertions and conclusory allegations" are

insufficient to support a claim and may be dismissed without a hearing. *Mayberry* v. *Peetsock*, 821 F.2d 179, 185 (3d Cir. 1987); *see also United States* v. *Montilla*, 85 F. App'x 227, 230 (2d Cir. 2003) ("defendant's bald assertions fail to overcome the presumption that counsel did advise him of his right to testify, and that, if counsel failed to do so, that decision was the product of sound trial strategy"); *Murph* v. *United States*, 12 F. Supp. 2d 557, 572 (E.D.N.Y. 2014) (rejecting *habeas* claim where the petitioner offered "nothing other than conclusory allegations and bald assertions" (quoting *Davis* v. *Dir., TDCJ CID*, 07 Civ. 397, 2008 WL 1786974, at *9 (E.D. Tex. Apr. 18, 2008))).  This Court must "begin with 'the presumption that counsel was effective,' and, when reviewing the challenged conduct, 'look for legitimate justifications for that conduct, including justifications transparent on the record....'" *Id.* at 82-83 (quoting *Greiner* v. *Wells*, 417 F.3d 305, 320 (2d Cir. 2005)).

### 2.    Withdrawal of a Guilty Plea

Federal Rule of Criminal Procedure 11(d)(2)(B) provides that "[a] defendant may withdraw a plea of guilty or nolo contendere ... after the court accepts the plea, but before it imposes sentence[,] if ... the defendant can show a fair and just reason for requesting the withdrawal." Fed. R. Crim. Pro. 11(d)(2)B).  A defendant who seeks to withdraw his or her plea bears the burden of showing that there are valid grounds for withdrawal. *United States* v. *Couto,* 311 F.3d 179, 185 (2d Cir. 2002). "The fact that a defendant has a change of heart prompted by his reevaluation of either the Government's case against him or the penalty that might be imposed is not a sufficient reason to permit withdrawal of a plea." *United States* v. *Gonzalez,* 970 F.2d 1095, 1100 (2d Cir. 1992).  In general, to determine whether the defendant has shown a "fair and just reason" to justify withdrawal, a district court considers, *inter alia:* (1) whether the defendant has asserted his or her legal innocence in the motion to withdraw the guilty plea; (2)

the amount of time that has elapsed between the plea and the motion (the longer the elapsed time, the less likely withdrawal would be fair and just); and (3) whether the government would be prejudiced by a withdrawal of the plea. *Couto,* 311 F.3d at 185. Courts may also look to whether the defendant has "raise[d] a significant question about the voluntariness of the original plea." *United States* v. *Torres,* 129 F.3d 710, 715 (2d Cir. 1997).  The standard for withdrawing a guilty plea is stringent because "society has a strong interest in the finality of guilty pleas, and allowing withdrawal of pleas not only undermines confidence in the integrity of our judicial procedures, but also increases the volume of judicial work, and delays and impairs the orderly administration of justice." *Maher,* 108 F.3d at 1529 (citation, internal quotation marks, and alteration omitted).

###   B.       Discussion

In order to prevail on the claim raised in his Petition, under the *Strickland* standard Todd must show that his counsel's representation fell short of an "objective standard of reasonableness," and "affirmatively prove prejudice," resulting from that deficient performance. *Strickland*, 466 U.S. at 687-88.  Todd can show neither.  The record makes clear that Todd's counsel diligently represented Todd at all stages of Todd's case, including by conferring with Todd about the benefits and consequences of his guilty plea and the Plea Agreement.  Moreover, Todd cannot show prejudice, because he cannot show that, but for any alleged deficiency in counsel's performance, he would not have pleaded guilty or he would have been permitted to withdraw his guilty plea and would have proceeded to trial.  In fact, the record demonstrates the opposite, which is that Todd knowingly and voluntarily pleaded guilty, after consultation with his counsel about all aspects of the plea including the potential sentencing exposure, that he gained measurable strategic advantages from his guilty plea, and that Todd had no valid legal basis on which to subsequently seek to withdraw his plea.

16

To begin with, Todd's initial premise – on which he bases his entire claim – is flat out wrong. Todd asserts without support that the Government "breached" the Plea Agreement by seeking an above-Guidelines sentence for Todd. However, the explicit terms of the Plea Agreement belie that conclusion. In the Plea Agreement, the parties stipulated that the Guidelines range was 190 to 222 months' imprisonment (which was defined as the "Stipulated Guidelines Range") but also explicitly noted that "either party may seek a sentence outside of the Stipulated Guidelines Range. . . based upon the factors to be considered in imposing a sentence pursuant to Title 18, United States Code, Section 3553(a)." (A. 40-48). Moreover, the record makes clear that Mr. Brill discussed this particular provision with Todd in advance of his guilty plea. *See* Brill Aff. ¶ 9 (Mr. Brill discussed with Todd, before his guilty plea, that Todd "would have the ability to argue for a below Guideline sentence," and that "the government could argue for above"). Thus, the parties agreed, and Todd discussed with his lawyer, in advance of Todd's plea that neither party would be bound to argue for a Guidelines sentence at the time of Todd's sentencing. Accordingly, the Government's argument for an above-Guidelines sentence, which argument was based on significant additional violent criminal conduct – namely, Todd's attack on a fellow inmate at the MCC that occurred after Todd's guilty plea and before his sentencing – was explicitly permitted by the Plea Agreement.

From Todd's false premise that the Government somehow "breached" the Plea Agreement, he then argues that he had a "right to withdraw the plea." (Pet. at 19). Todd has not – and could not – show any reason why he should have been allowed to withdraw his plea after the Rule 11 proceeding before this Court (at the end of which Todd's guilty plea was accepted) and before his sentencing. As set forth above, the guilty plea proceeding conducted by this Court fully complied with all of the Rule 11 requirements. Among other things, this Court determined

17

that Todd was competent to plead guilty, explained the charges and the potential penalties to Todd, enumerated the rights that Todd would be giving up by pleading guilty, ensured that Todd was satisfied with his attorney's representation and had discussed the case with his attorney. (Plea Tr. 3-19). With respect to the Plea Agreement, this Court ensured that Todd had reviewed it with his counsel and, with respect to sentencing, ensured that Todd understood that the Court would not be bound by the parties' Guidelines analysis in the Plea Agreement and that the Court could impose a sentence outside of that Guidelines range. (Plea Tr. 28, 34-35). Finally, the Court determined that there was a factual basis for Todd's plea, based upon the sworn statements made by Todd during his plea allocution. (Plea Tr. 39-42). Todd has not alleged that his plea was not voluntary, that he somehow misunderstood the terms of the parties' Plea Agreement, or that he is factually innocent. Thus, Todd has not met his burden of showing any "fair and just reason" that could be the basis for him to seek withdrawal of his guilty plea. Fed. R. Crim. Pro. 11(d)(2)(B). Instead, at most he has shown a "change of heart," based on the above-Guidelines sentence that the Government sought and that he ultimately received, which "is not a sufficient reason to permit withdrawal of a plea." *United States* v. *Gonzalez,* 970 F.2d 1095, 1100 (2d Cir.1992).

In the Petition, Todd also complains that his lawyer was ineffective, because his lawyer "refused to communicate" concerning Todd's request that Todd seek to withdraw his guilty plea. (Pet. at 18). While a lawyer's failure to adequately communicate with a defendant could be the basis for finding the lawyer's performance to be deficient, the record in this case amply demonstrates the opposite. In particular, Mr. Brill's affidavit details numerous meetings during which he and Todd discussed all aspects of Todd's case as the sentencing date approached; which discussions included several in-person meetings and telephone calls lasting more than

several hours in total.  (Brill Aff. ¶¶  14, 17, 18, 20).  Mr. Brill states that they discussed "all aspects of the case" and that, if Todd had "expressed any concerns about the plea agreement, we certainly would have discussed those concerns."  (Brill Aff. ¶ 20).  Thus, the record in no way asserts Todd's "bald assertions" that Mr. Brill "refused to communicate with him," and are thus insufficient to make out a claim that his counsel was ineffective.  *Montilla*, 85 F. App'x at 230. Instead, the factual record details a sequence of communications between Mr. Brill and Todd – including meetings, phone calls, and emails over a several-week period of time – about all aspects of his plea and sentencing.

Nor can Todd show any prejudice from any alleged ineffective representation.  Todd does not claim that he would not have pleaded guilty, had he known that he would receive an above-Guidelines sentence.  In fact, the record demonstrates that he was advised in advance of his plea – both by his lawyer and by this Court – that there were no guarantees as to what Todd's sentence would be, that the Government could seek an above-Guidelines sentence, and that the Court, in any event, would not be bound by the Guidelines calculation contained in the parties' Plea Agreement.  (Brill Aff. ¶9; Plea Tr. 28-34).  Todd voluntarily entered a guilty plea, pursuant to the Plea Agreement, with a full understanding of his sentencing exposure.

Moreover, the record also demonstrates the strategic reasons for Todd to plead guilty, which included substantial benefits to him, none which he disputes.  Among other things, by pleading guilty, counsel for Todd advised that, if he were to go to trial, Todd would have been exposed to greater "relevant conduct," which was not included in the Guidelines stipulated by the parties in the Plea Agreement, and that, pursuant to the Plea Agreement the Government had offered that Todd could plead to a lesser included charge on Count Two, which carried at five-year consecutive (rather than ten-year consecutive) mandatory minimum sentence.  (Brill Aff. ¶¶

19

7, 8).  Thus, the record demonstrates, and Todd does not dispute, that he gained substantial

benefits by pleading guilty pursuant to the Plea Agreement.  Although Todd now makes the

conclusory statement that he would have sought to withdraw his guilty plea, there is nothing in

the record to substantiate that claim and Todd does not assert that he would have proceeded to

trial, which would have been the only viable alternative had he withdrawn his plea.  This type of

conclusory allegation at this late stage cannot support Todd's ineffective assistance of counsel

claim.  Instead, it appears that Todd can establish only that he is unhappy with his sentence,

which is not a basis on which he could have withdrawn his plea.  Where – as here – at most Todd

could establish that he asked his counsel to file a plea withdrawal motion that would have been

meritless, this cannot serve to show any deficiency in counsel's performance.  *Abad*, 514 F.3d at

275-76 ("counsel could not therefore have been ineffective for failing to make a motion that

would have been futile").

**IV.     Conclusion**

For the reasons stated above, the Court should deny Todd's Petition without a hearing.  In

addition, because Todd has not made a substantial showing of the denial of a constitutional right,

no certificate of appealability should issue.

Dated:  New York, New York
          May 4, 2016

                                            Respectfully submitted,

                                            PREET BHARARA
                                            United States Attorney for the
                                            Southern District of New York


                              By:     __s/Jessica A. Masella_____
                                            Jessica A. Masella
                                            Assistant United States Attorney
                                            Tel: (212) 637-2288