LINCOLN SQUARE LEGAL SERVICES, INC. | Fordham University School of Law | Tel 212-636-6934
150 West 62nd Street, Ninth Floor | Fax 212-636-6923
New York, NY 10023

December 9, 2016

**Via ECF**
Honorable Richard J. Sullivan
United States District Judge
United States District Court
Southern District of New York
Thurgood Marshall Courthouse
40 Foley Square
New York, NY 10007

  Re: **U.S. v. Cunningham**
   S4 12 CR 45(RJS)

### Sentencing Memorandum

  This sentencing memorandum is submitted on behalf of Mr. Damian Cunningham, who will appear before this Court for sentencing on the afternoon of Friday, December 16 following his plea of guilty to a single count of conspiring to violate the Hobbs Act, 18 U.S.C. § 1951. We respectfully urge the Court to impose a sentence at the low end of the stipulated sentencing range and recommend his designation to a medical facility.

  This 32-year-old man has no prior criminal convictions. He regrets the mistakes and the relationships that led him to this case. He has struggled with learning challenges since he was a child. For the last dozen years he has suffered from epileptic seizures. Yet he is a skilled barber who has worked consistently since his teenage years. Mr. Cunningham enjoys the support of his fiancée, his daughter, his mother, her husband, and other relatives. When he is released, he will return to a productive, law abiding life.

  As the Court has noted, this case has followed an unusual trajectory. Coming to understand and appreciate the wrongfulness and seriousness of his conduct, Mr. Cunningham resolved this case within a few weeks of his re-prosecution. Mr. Cunningham has shown this Court the real and substantial long-term impact of his prosecution and punishment.

  Mr. Cunningham's plea agreement with the Government and the sentence recommended in the updated Pre-Sentence Report acknowledge the seriousness of his conduct, which factor into both the Guidelines offense calculation and the enhancement for obstruction of justice. The agreement and the PSR's

recommendation also reflect the reality that when he was afforded the opportunity to come before this Court again, Mr. Cunningham swiftly admitted his culpability and accepted responsibility for his conduct.

The Court can readily see that punishment has had exactly the right effect on Mr. Cunningham; he has changed. While his plea does not erase the prior course of this case, it merits consideration. A sentence within the range identified in the agreement—and particularly the recommended sentence in the PSR—would reflect both the seriousness of Mr. Cunningham's conduct before he returned to this Court and the very different path he has taken after remand.

**Both the Adjustments for Obstruction and Acceptance are Proper**

The parties have stipulated that both the adjustments for Acceptance of Responsibility, U.S.S.G. § 3E1.1, and for Obstruction of Justice, U.S.S.G. § 3C1.1, apply in this case. The Court has noted that the two adjustments do not often sit easily together. According to Application Note 4 to the Obstruction Adjustment, this upward adjustment "ordinarily indicates that the defendant has not accepted responsibility . . . . There may, however, be extraordinary cases" in which both adjustments apply. This case presents an unusual record in which both adjustments properly apply. The factual record straightforwardly presents an act of obstruction followed by acceptance of responsibility.

This is an extraordinary case presenting strong evidence that Mr. Cunningham's state of mind has changed. The Court has observed how differently Mr. Cunningham has conducted himself in recent weeks as compared to his conduct three years ago. His guilty plea refutes his earlier testimony and demonstrates his acceptance of responsibility. In addition, the alacrity with which Mr. Cunningham entered his plea served significant institutional interests, saving judicial and governmental resources. More importantly, Mr. Cunningham's guilty plea spared civilian witnesses the difficulty of a retrial. His decision to admit guilt in this phase of the case is significant.

The Second Circuit has not established a standard for determining when a case is "extraordinary" as the term is used in Note 4 of the Acceptance of Responsibility adjustment. See United States v. Teyer, 322 F. Supp. 2d 359, 368 (S.D.N.Y. 2004), aff'd in part, rev'd in part on other grounds sub nom. United States v. Magana, 147 F. App'x 200 (2d Cir. 2005).[1] The cases do, however, identify

---

[1] District courts within the circuit therefore have looked to standards articulated by the Eighth and Ninth Circuits. See Teyer, 322 F. Supp. 2d at 368. The Eighth Circuit has held that courts should consider "the totality of circumstances, including . . . whether [a defendant] voluntarily terminated his obstructive conduct, or whether the conduct was stopped involuntarily by law enforcement." Id. (quoting United States v. Honken, 184 F.3d 961, 968 (8th Cir. 1999)). The Fifth,

factors for consideration.  Two such factors are key in this case: Mr. Cunningham has voluntarily and freely chosen to abandon and mitigate his obstructive conduct, and he has done so in a timely fashion, avoiding significant costs.

First, Mr. Cunningham's guilty plea is a voluntary renunciation of his obstructive conduct.  His plea distinguishes this case from others in which a defendant engages in obstructive conduct after entering a guilty plea. See United States v. Fernandez, 127 F.3d 277, 285 (2d Cir. 1997) (citing United States v Rodriguez, 928 F.2d 65 (2d Cir. 1991)) (noting that the defendant's subsequent conduct "refute[d] the disavowal of future criminal activity implied by the guilty plea").  Here, Mr. Cunningham refuted his obstructive conduct in the most powerful way.  Because Mr. Cunningham's prior obstruction involved only his trial testimony, he could do no more than admit his own guilt to terminate that conduct.

When a defendant clearly accepts responsibility after obstructive conduct in a manner that directly corrects the obstruction, an Acceptance of Responsibility adjustment easily follows.  Indeed, the Second Circuit has described a scenario in which the defendant has earned an obstruction enhancement, "but subsequently come to accept responsibility fully—for the obstruction as well as the crime of conviction," as "the most obvious example" of when the obstruction and acceptance adjustments may simultaneously be imposed. See United States v. Enriquez, 42 F.3d 769, 773 (2d Cir. 1994).

Second, Mr. Cunningham not only directly repudiated his obstructive conduct, he did so very swiftly after getting the chance to reconsider his situation.  While timeliness of a pleas is always a factor in considering acceptance of responsibility, it can be particularly salient when determining whether a case is "extraordinary" under Note 4 of the Acceptance of Responsibility adjustment.  See United States v. Kumar, 617 F.3d 612, 636 (2d Cir. 2010); United States v. Fredette, 15 F.3d 272, 274 (2d Cir. 1994); Teyer, 322 F. Supp. 2d at 376.

Mr. Cunningham, like other defendants facing retrial, might have been tempted to probe the degree to which the passage of time has weakened the prosecution's case.  The Government's ability to meet its burden rarely improves with the passage of years.  However, in this case, plea negotiations began immediately after Mr. Cunningham's first appearance and concluded swiftly thereafter.  Retrials can impose high practical and psychic costs.  Mr. Cunningham

---

Seventh, and Tenth Circuits have adopted this test. See id. (citing United States v. Salazar-Samaniega, 361 F.3d 1271, 1279–80 (10th Cir. 2004)).  The Ninth Circuit has directed that "the relevant inquiry . . . is whether the defendant's obstructive conduct is not inconsistent with the defendant's acceptance of responsibility."  Id. (quoting United States v. Hopper, 27 F.3d 378, 383 (9th Cir. 1994)).

did not take that road.  The government was spared the practical problems of retrying this case, and the civilian witnesses were spared the difficulties that would likely attend the reopening of difficult memories.

This case is therefore extraordinary within the meaning of Note 4 of the Acceptance of Responsibility adjustment.  Mr. Cunningham's plea refuted his earlier testimony, and his unequivocal subsequent conduct has served significant institutional interests.  This is a heartland case exemplifying when the acceptance and obstruction adjustments are properly imposed simultaneously.  The stipulated range, 78 to 97 months, is the proper sentencing range in this case.

**Mr. Cunningham's Background**

Damian Cunningham is a 32-year-old United States citizen who is a Jamaican native.  When he was an infant in Jamaica, his mother left him to find work in the United States.  Although his mother always supported him and saw him from time to time when he was young, Mr. Cunningham lived with his father, who struggled with alcohol, until he was 8 years old.  Mr. Cunningham then was moved to his aunt's home.  Three years later, he came to the United States to live with his mother and her husband in Mt. Vernon.  They remain significant sources of support.

School challenged Mr. Cunningham when he arrived in the United States as an 11-year-old boy.  He found himself far behind other children because he came from a much weaker school system.  He was held back in school and consigned almost entirely to special education classes.  Later on, he was diagnosed with dyslexia.  Even now, he has some trouble focusing.  He reads very slowly and his reading comprehension is not always strong.  After leaving high school, he studied for his GED at Taylor Business Institute.  Since his first trial, he has continued pursuing his GED at FCI Fort Dix.  Mr. Cunningham's strengths are visual and manual.  He draws well, progressed in a welding program, and is a skilled barber.

Mr. Cunningham began to have seizures around his twentieth birthday.  Although infrequent at first, his seizures imposed real restrictions on him and caused understandable anxiety.  Almost always occurring in the shower, the seizures required him to continue living with his mother, who would listen outside the bathroom as he showered.

Mr. Cunningham's seizures have become more frequent, particularly since his incarceration.  Although our records are not complete, he suffered seizures in April, July and November of 2015.  He seems to have experienced five or six seizures over the last year despite his best efforts to seek medical attention and

comply with his medication regime. The seizures still come when he is in the shower. Ensuring that help is available to him, should he need it, is a complicated matter in a secure facility.

Mr. Cunningham last had a seizure while showering on Friday, November 25, 2016. He fell and injured his back and leg. Officers deemed his situation severe enough to summon an ambulance to rush him to a hospital for treatment. Mr. Cunningham reports being told that he was unconscious and stopped breathing for some two or three minutes during the seizure. As can well be imagined, these episodes make Mr. Cunningham fear for his life.

In addition to being a hardworking man who wants and expects to support his family when he is released, Mr. Cunningham has the love and support of his fiancée, daughter, mother, stepfather and extended family, demonstrated by the letters they submitted before Mr. Cunningham's first sentencing. He is the father of a two-year-old girl and has maintained a good relationship with the mother of his child. His family attended his recent arraignment and remains supportive and engaged. There is every reason to believe that Mr. Cunningham will return home a severely chastened man. He is being punished for what he acknowledges to be a terrible mistake. He has no prior criminal history and poses little risk to reoffend.

**The Sentence in this Case**

We respectfully urge the Court to impose the sentence recommended by the updated Pre-Sentence Report. That sentence would best account for the factors in 18 U.S.C. § 3553. The stipulated range is 78 to 97 months, or 6-and-a-half to 8 years. The PSR recommends a 78-month sentence, at the low end of that range. That sentence of longer than 6 years would impose significant punishment on a first offender with a serious health problem who first engaged in serious criminal conduct at almost 30 years old.

This was a very serious case. While Mr. Cunningham was a low-level player in the overall case, his conduct caused real harm. Fortunately, he caused no physical injury. These factors and others, are balanced by the Guidelines, which account for the aggravating aspects of Mr. Cunningham's criminal conduct and punish him for having obstructed justice. A sentence longer than six years for a first offense expresses strong condemnation of Mr. Cunningham's criminal conduct and affords ample justice to the victims of his conduct. A sentence of that magnitude also serves as a strong deterrent to others, maintaining the well-earned reputation that justice in the federal courts is strict and inescapable.

**Conclusion**

The proper Guidelines range in this case is the stipulated range of 78 to 97 months, or 6-and-a-half to 8 years. Mr. Cunningham swiftly accepted responsibility for his conduct after this case was remanded. Mr. Cunningham refuted his earlier obstructive conduct, and his subsequent acceptance of responsibility saved the Court, government, and civilian witnesses significant costs. This case therefore warrants simultaneous adjustments for Mr. Cunningham's prior obstruction and current acceptance of responsibility for his actions.

The stipulated Guidelines range accounts for the complexities of this case and balances the sentencing considerations set forth in 18 U.S.C. § 3553. A sentence at the low end of that range, as recommended in the PSR, is appropriately severe and appropriately tempered by mercy, given that Mr. Cunningham's seizure condition makes incarceration particularly difficult for him and that there are many reasons to expect Mr. Cunningham to return to a productive life supporting his family.

We respectfully urge that the Court sentence Mr. Cunningham to a prison term of 78 months and ask that the Court recommend that Mr. Cunningham be designated to a facility that can best meet his medical needs.

Respectfully submitted,

_____

Ian Weinstein
Supervising Attorney

Michael Martin
Executive Director
Lincoln Square Legal Services, Inc.
(212) 636-6934
Attorneys for Mr. Damian Cunningham

cc: Jared Lenow, Esq.
   Asst. United States Attorney
   Southern District of New York
   (via ECF)